Are we ready to go? We are your honor. This is Lloyd Bookman on behalf of the plaintiff's appellants. And we're ready your honor. This is Shannon Chambers on behalf of the defendant. All right. Welcome all three judges around the line. We're ready to hear the case of California Pharmacists California Hospital Association and David Maxwell-Jolly. All right. I guess it's a motion for clarification brought by California Hospital Association. So it seems appropriate for California Hospital Association to proceed. I don't know whether we've had any discussion about time. We're not rigid but I suspect since we're all assembled we might as well have 20 minutes to decide if it's necessary. Don't feel compelled to use that amount of time. But unless it seems to be unnecessary we won't cut you off before the 20 minutes. Although you may want to save some time for rebuttal. All right counsel let's proceed. Thank you your honor. This is Lloyd Bookman on behalf of the hospital plaintiffs including the California Hospital Association. And I would like to reserve whatever time I don't use on my opening argument for rebuttal. And I do not anticipate using the full 20 minutes. I'd like at the outset though to thank you all for all for having this oral argument. All the attention you've given these Medi-Cal rate cases. I think all of the parties are very appreciative of that. The issue that we have today is a relatively narrow issue in the scheme of these cases. But very important to the hospitals and presumably to the state as well. Mr. Bookman this is Judge Smith. I apologize for cutting you off so quickly here. But I think it might be helpful for the judge's concern particularly perhaps for Judge Fletcher who's new on this to understand which case is which case. You are telling us in your motion that you want us to in effect add the words AB 5 to what we previously had in our order as AB 1183. And yet we heard that is the panel of Judge Reinhart, Judge Berzon and myself heard the case of Independent Living Center. We originally issued an order finding that individual standing was found when you're seeking injunctive relief under the Supremacy Clause. We then sent the case back to the district court. The district court issued an order on AB 5. There were different counsel involved, different parties involved. And the district court granted an injunction which was later amended in joining the enforcement of Welfare and Institutions Code section 14105.19B1 which was to reduce by 10% payments under the Medi-Cal fee for services program. But in this case for physicians, dentists, pharmacies, adult day health care centers, clinics, health systems and other providers on or after July 1. That was later amended to August 18, 2008. That is now on appeal before what was Judge Reinhart, Judge Berzon and myself, now Judge Reinhart, Judge Fletcher and myself. The district court however denied the requirement for managed care plans and non-contract acute care hospitals on the basis that no irreparable injury was shown. Now I know we dealt with that issue in the AB 1183 case. But the reality is, unless you can straighten me out on this, to the contrary, the district judge denied what you're looking for with respect to your particular plaintiffs under AB 5. Is that your understanding or am I mistaken? Your Honor, you are correct in your recitation of the history. I don't know that I would agree with your characterization of what we are trying to do through this motion for clarification. For a moment, put aside that. I just want to make certain that we have an agreement. On our remand, the issue of the injunction AB 5 was dealt with insofar as the district court went. There were two appeals that were made from the district court's modification of the order. One was on the basis that AB 5 was in fact properly enacted and not a violation of A30A of the Medicare Act. And secondly, there was a question of whether or not the starting date of the district court adopted on the basis that she had no choice but to do that based upon the 11th Amendment. Now, that is an appeal that I say we heard in San Francisco, and Judge Reinhart, Judge Fletcher, and I are deciding that issue with respect to AB 5. But it seems to me, unless I'm unaware of something in some other ruling, that the portion of AB 5 that you're talking about was left on the table at the district court level and was not appealed to this court. Is that wrong? That is what you just said is absolutely correct. Okay. So, in your analysis, I hope you will deal with the fact that when we were issued on April 6th, we dealt only with 1183. Nobody ever even mentioned AB 5 to us that I can recall, and I don't remember seeing anything in the pleadings that specifically asked us to do anything different than to look at AB 1183. So, if you'll keep that in mind, I'd be grateful. I will, Your Honor, and thank you for that. Yes, the Independent Living Center case dealt with AB 5. You're absolutely correct, and the district court judge did deny or did decline to issue the preliminary injunction as to the hospitals with respect to AB 5, and that was not appealed. By way of background, the hospitals do have a state court case that they're involved with challenging the AB 5 limitation, and the California Hospital Association and a variety of other independent and state courts. Okay, and the state mentioned that in its response to your request for clarification. So, for our purposes, you're asking us to, in effect, and this is my terminology, to piggyback the AB 5 issue onto the AB 1183 issue, but the reality is that the district court denied what you originally, or not you, but the Independent Living asked for with respect to your particular plaintiffs. You now have a separate action pending in the state court on the same issue. Isn't this, in effect, a third bite at the apple that you're trying for here? We don't think so, Your Honor. We wouldn't be here and making this motion if we did. The key question, I think, is whether AB 1183 and the hospitals' challenge to AB 1183 encompasses the 10 percent reduction that was initially enacted through AB 5, the predecessor legislation, or whether our view is that the AB 1183 rate reductions and AB 1183 itself included not just what we've called in the papers the CMAQ minus 5 percent reduction for inpatient services, but it also included the 10 percent reduction. So, we understood that AB 1183, at least as of October 1 of 2008, when it went into effect, included the 10 percent reduction as part and parcel of AB 1183. But just as a matter of standard statutory construction, I have a copy before me of AB 5 and AB 1183. AB 5 enacts California Welfare and Institutions Code section 14105.19, which I think is the gravamen of your complaint. Your Honor, actually, in this case, it's 14166.245. Okay. So, that's a separate one. I thought the focus was 14105.19, because that's what the gravamen of the earlier complaint was. Right. The 14105.19 statute dealt with a variety of rate cuts under AB 5 that imposed the 10 percent reduction. It affected some of the hospital services. It didn't affect the inpatient services that we're talking about today. AB 5 also enacted 14166.245, which is what enacted the 10 percent reduction for the inpatient hospital services that are of concern today. Well, let's say you're correct, and I apologize to my colleagues for barging in here. If anybody wants to take the microphone, I will stand down, but I'm just trying to use the time here. I'm looking now at AB 1183 and looking at the Welfare and Institutions Section 14166.245 that you mentioned. This doesn't say, I mean, it amends this thing, but basically it recites this new code in Hike-Verba, including the amendments. Whatever is left over from AB 5, from your perspective, is still in here, isn't it? Whatever is left over from AB 5 is still in. What's the problem? Why are we saying that AB 1183, in effect, reenacted and includes the 10 percent cut that was initially enacted by AB 5, and why is it sort of a new enactment that's at issue today? The reality is that the code section was amended, and whatever remains remains. Whatever was added was added, but when you look at the Welfare and Institutions Section 14166.245, you're going to see the new language is going to be an underline on it in terms of how it was amended in a particular section, but that's what the law is now. It has nothing to do with the previous law. It's what the law is now. Isn't that right? What you just said, Your Honor, is correct. Yes, sir. What are we talking about here? Either it's in or it's not in. It's in, but let me refer back to the introductory language in AB 1183. I think it would help you understand the position that we're taking. That introductory language, just part of the statute, part of the enactment, part of AB 1183, not part of the codified statute, recites that existing law reduces by 10 percent payments for until January 2013, that is this bill, AB 1183, would revise this provision by applying this reduction to all hospitals that receive Medi-Cal reimbursement from the department and that are not under selective contracts with the department. Our view is that the legislature, when it enacted AB 1183, took a brand new look at the 10 percent reduction and said, okay, we are, in effect, we are keeping this 10 percent reduction, in effect, reenacting the 10 percent reduction as part of AB 1183. That plays very importantly into how the courts are to look at a challenge to AB 1183 under Section 30A, where under the orthopedic case, the court is being asked to reduce efficiency, economy, quality of care, hospital costs, and show a reasonable relationship between the rates. But are we not, Mr. Bookman, in a situation where our court has found, both with respect to AB 5, at least insofar as the supremacy clause decision we've made, and we're considering, actually, we are considering the issue with respect to the case that's now being written, and with respect to our April 6th order, we have determined that, in fact, the adoption of AB 1183 did not follow orthopedic hospitals. Correct. And that's why the district court concluded there was a likelihood of success on the merits. That's right. And in deciding that it did not follow orthopedic hospitals, the question is whether the state engaged in the appropriate process, which would have included a consideration of the 10 percent reduction initially enacted by AB 5, and specifically and explicitly retained by the state legislature in AB 1183, as well as the other reductions that were made in AB 1183. But aren't you simply saying that the legislature not only didn't get it right in the terms of A30A, it really didn't get it right? We already said in our April 6th order they didn't get it right. The fact that it may or may not have included some of the language or some of the same cuts as AB 5, you still have the same issue in that the district court found there was a did not consider the requirements of the law as interpreted by orthopedic hospital before it enacted AB 1183. But having said that, aren't we back to the same issue? We still have to look at what 1183 says. That is the law. That's what 14166.245 says now. We don't have to look back at AB 5 to understand that. It says what it says in that section. That's correct, Your Honor. What it says in that section is the rates will be reduced by the lower of 10 percent or this other construct, the CMAQ minus 5 percent negotiated contract rate construct. So that's what the law currently says. And what we're saying is by challenging AB 1183 and what the state legislature did in September of 2008 when it enacted AB 1183, we are challenging the entirety of 14166.245 as it applies to inpatient hospital rates, which includes both the 10 percent reduction, which is in one subdivision of the section, and the CMAQ minus 5 percent rate reduction as well. But what is it in 14166.245? What specific language? I've got it in front of me here. What specific language is the director not following according to your instruction of this statute? What's the director not... No, the director is... Okay. The director is following... I've got it in subdivision B. What we're challenging is in effect the entirety of subdivision B as well as subdivision C of 14166.245. B deals with what are called interim rates that are ongoing payments throughout the year, and C deals with the final rates of October. But they do parallel things. And B, B1 says we're reducing rates on and after July 1, 2008 by 10 percent. And B2 says we're going to... Beginning October 1, 2008, we're going to take those rates that have already been reduced by 10 percent, and now we're going to compare them to another rate reduction, a contract rate... average contract rates minus 5 percent. So what we've that we are challenging is B1 and B2 as well as on the next subdivision, C1, which enacts a 10 percent rate reduction on final reimbursement, and C... I guess it's down in C3B. Sorry about the this CMAQ minus 5 percent rate reduction. So you're saying, and again, I know you two in the state live with this stuff every day. We have the pleasure of doing it only periodically, and it is complex. But am I understanding you to say that your real complaint is we enjoined the enforcement of 1183, and the director is saying, fine, we're not going to enforce 1183, but we're going to pretend like 1183 was never enacted, and we're going to go ahead and we're going to apply the rate cuts as applied in AB5? That's correct. That is correct. And the reason we're saying that that is part and parcel of 1183 is the way we review what the legislature did in 1183 based in part on that introductory language I referred to was to take another look at the 10 percent cut and say, you know, we're going to keep that and then pile on another cut on top of that. And so we view the 10 percent cut, even though it originated with AB5, as part of what we're challenging in this AB1183 challenge. May I ask you a question here? If the amendments had been to a statute that had been in effect for 20 years, I doubt that you would be saying here, we're not just challenging the amendments, we're challenging the cuts that were originally taken 20 years ago. It seems to me at least unlikely that that would be your position. I know you could make an argument that they reenacted the whole thing, but if they had had a system that had originated with cuts 20 years ago, and then they added another 5 percent today, it would be very difficult to make the argument you're making. It seems to me, and maybe nobody on this phone will agree with me, that the reason you're making this challenge is because twice in a very short period there have been rate cuts. Can you explain to me why is it that there were these two separate bills in so short a time? I can tell you my understanding, Your Honor. AB5 was enacted in February of 2008 at a time where we were having budgetary problems in the state, which of course to save enough money that would result from this 10 percent cut it did in AB5. By the time that the state was looking at its fiscal year beginning July 1, 2008 budget, the state said, you know what, we can balance the budget by giving the providers back some of what we took in AB5. So they enacted, effective July 1, 2008, AB1183, which for most providers changed the AB5 cut to either from a 10 percent cut to either a 5 percent cut or a 1 percent cut. It just had this disparate impact for inpatient hospital services that continued. So it was basically the legislature saying we think we did too much damage to our rates in AB5, we're going to back off a bit from the reductions that we made in AB5 and enact AB1183. That's how I understand what happened. And can you answer one more question? Judge Smith has explained the history with which you agreed that you didn't appeal the district court decision when you challenged AB5. And but now you're reviving it when you're challenging AB1183. Doesn't that put a considerable burden on you to having accepted it in the prior action, the prior proceeding? We, our clients, and no hospitals in fact, were parties to the independent living center case. So it is true that an independent living center, the district court declined to issue an injunction as to the hospital rates with respect to AB5. But our clients, the hospitals, were not a part of that case, weren't parties to that case. They were, as I indicated at the outset, parties and are still parties to a separate state court action dealing with AB5. But they were not parties to the independent living center case in federal court. Why would it not be better for us to, well let me back up, where did, I assume you've sought injunctive relief in the superior court, is that correct? A long time ago we sought a preliminary injunction, that is correct. And was that denied? That was denied. And what date was that denied? I don't remember, Judge. Was it, what year was it? It was some time ago, back in the summer. Judge, where are you? We stayed that case and we have a staff conference coming up in a couple of weeks. We put it on hold actually to await this panel's decision in independent living centers. The parties as well as I think the superior court judge wanted to see what that case did. Did you try in any way to intervene in the independent living action before the district court? A few, yes. We came in and I, in two attempts to intervene on behalf of selected hospitals, not on behalf of the hospital association. The first time admittedly we came in on behalf of what were district hospitals and then there's some esoteric 9th Circuit law that does not allow hospital districts or district entities to raise supremacy clause claims against the state. Then we came back to the trial court with several other hospitals, again individual hospitals, and the judge at that time said, you know, I think it's in effect a little too late for you to intervene in my case. So from your perspective with respect to your current clients, this is the only train leaving the station? Well, I mean, candidly we do have the 85 state court case and once you folks issue a ruling on the independent living center case that's pending before you, I would expect we could revitalize that case and move it forward. But apart from the state court case, yes, this is the only challenging as part of 1183, not as a separate challenge to AB5 and looking at what the legislature did or didn't do on 1183, which we think makes what the 10% reduction that came from AB5 invalid. Let's just say arguendo. Say that our panel on the AB5 case, independent living, came out in a particular way that were your clients a party would take care of this matter, but you're not parties to that. How are you going to benefit if it were to come out that way? If AB5 were to come out favorably on the substantive merits, we think it would be influential to the state superior court and then we would have to try to get our relief at least as to the AB5 cuts in state court. That's where we would go, your honor. Okay. So you would be proceeding on the 1128 in federal court and on AB5 in state court? That's correct. That is where we are at right now with AB5 because AB5, aside from this 10% reduction that we're talking about today, the rest of AB5 or what started with AB5 sunset on February 28th. Because of the 11th Amendment, we can't get retroactive relief against the state and federal court. Therefore, there's no reason for us at this point to be hospitals in federal court challenging AB5. But theoretically, again, just arguendo, if the filing date was already established for your state court action on AB5 and the 11th Amendment issue were satisfied, presumably you could get relief there. In state court? Yeah. Yeah. We will certainly be making that effort. So then if that's the case, why do you need injunctive relief of the nature you're seeking here? I'm calling it the piggyback, but I know you don't appreciate that terminology, but you know what I mean. Yeah. The reason we're here and trying to include the 10% cut as part of AB1183, first, we think it is properly part of AB1183. When we challenge what the legislature did in light of orthopedic, we're challenging what they did when they enacted AB1183, and we're saying that that was improper. Therefore, everything that's part of AB1183, which we perceive to include this 10% cut, is improper. This is the right place for us to bring this challenge. It's in our view, it's part of AB1183, even though it originated with AB5. Why didn't you... I mean, you folks are obviously very capable lawyers. Why did you not mention... I know you had something in your pleadings about this earlier, but in what relief you actually asked for in this case, there was no mention of AB5. Why was that? Because we perceived, and whether the court agrees or disagrees with us, I think we'll soon discover, but we perceived AB1183 to include the 10% ongoing reduction that we're seeking to challenge. That's why we only focused on 1183 and didn't mention AB5. Also, we've got a... Again, where we're challenging AB5, and didn't think it appropriate to, at this late date, go in with a new challenge to AB5, which was enacted back in, gosh, in February of 08, and seek preliminary relief, where we were already in state court, and hopefully at some point, we'll get retrospective relief. We didn't think it was appropriate to be in two places at one time, challenging the same thing. Let me ask you this. This is Judge Fletcher. This is with respect to the state court action and the possible retroactive relief in that action with respect to AB5. I'm not fully understanding what you think might happen with respect to any sovereign immunity, or I'll call it an 11th Amendment defense in state court. What happens if, for example, the independent living case comes out the way you want? I'm back to the state court. State court influenced by the decision in the independent living goes your way. What happens with respect to monetary relief for the period this case has been pending, but during which you had no injunction? Do you get that money out of the state or not? We fight about that with the state. Our position is that we are entitled to retrospective relief, that there is no 11th Amendment bar applicable to state court, that the Alden case, which is the closest case on point, isn't really an 11th Amendment case. All it says is that the fact that the federal government has enacted a statute does not abrogate the state's sovereign immunity, but we will argue that the state writ of mandate process under which we have fled our case, under which we filed, is a process that, in effect, by which the state has voluntarily abrogated its sovereign immunity and allowed parties to sue the state to comply. I get the argument. You understand the Alden case, but you're saying that there's been a state waiver of sovereign immunity in state court with respect to this. That's our argument. That's the argument you will make, whether successfully or not. Of course, we don't know. I got it. That's right. That's why we think we have a reasonable opportunity for relief in state court, although it's obviously not a certainty, which is another reason for us to be here, arguing, and we think appropriately arguing, that the 10% cut is part of 1183 and asking you to clarify your order to so state. We don't think we're asking you to say that AB5 is invalid as part of this proceeding. We're just asking you to say that there's a probability of success that AB1183 is invalid and 1183, by specifically considering and retaining the 10% cut, includes the 10% cut and the order ought to extend to that. That's essentially our arguments. If you were writing the order that you were seeking, what specifically would you want that order to say? Let me think about that for a second. I would want it to say, and this will not be as eloquent as I could say it, but I would want it to say that the court pays the reimbursement reductions enacted pursuant to AB1183, including but not limited to, and then I would list them, one of which would be the reductions set forth in Welfare and Institutions Code section 14166.245. And then the others are 105.191 as to Hospital Services. And do you believe that you have set that information forth in your pleading? Yes, I think we have, Your Honor. I will candidly acknowledge that it is probably not as expressed or explicit as it could be if I had known that we would have this dispute. Again, we're just talking hypothetically here. If we were to issue an order, normally what we would do if we were doing what you wanted is we would go to the conclusion, what is in effect the prayer, and what you say here is that you want the court to amend its contract to one contract hospitals that was originally mandated by AB5, as well as to outpatient skilled nursing and subacute services. Is that what you're looking for? I believe so, Your Honor. Mr. Presiding Judge, I don't know about you or Judge Fletcher, but I have some questions for the State, unless you have others for the hospital people. No, I think we've taken up most of the 20 minutes. Just one thing to be clear, I just reread the conclusion. The argument that it applies to the 10 percent reduction that was originally included, as well as to outpatient mandated by AB5, as well as to outpatient skilled nursing and subacute services, I just want to emphasize that needs to also include the CMAC minus 5 percent cut that the State has already acknowledged. Say that again, the CMAC? CMAC, that's C-M-A-C minus 5 percent. Where would that be referenced in the statute? 14166.245, it's in a number of the subsections. 14166.245, and what sub part of that? It is in B-2 and in C-3 capital B. C-3 capital B. We call it the CMAC minus 5 percent. Okay, C-3 capital B, did you say? Yeah, as in boy. Yeah, okay. All right, thank you. Thank you, Counsel. We'll hear from the State. Good afternoon, Your Honor. Judge Smith, I first wanted to clarify a very important point that I think Mr. Bookman didn't accurately portray to you in terms of the involvement of their clients in the independent living center case. It is my understanding that they, in fact, filed a motion to intervene and were granted intervener status and did, in fact, appear and argue in that case, so I think your assessment that this is the third bite of the apple is entirely correct. It's our understanding that they fully briefed those issues and appeared and argued before this panel and that it was actually a member of their firm by the name of Greg Canicio that actually argued in front of that panel, so I don't think it's entirely correct for Mr. Bookman to be claiming that they had a limited role in that case. So, from your perspective, where we sent this back to the district court, the district judge carved out from her injunction the portion that dealt with Mr. Bookman's client, the fact that they didn't appeal that, are you suggesting that that is some form of, I think it's the wrong term here, but or at least there's latches or some kind of an equitable bar to their proceeding with this issue on at least on an injunctive basis? I would say so, your honor. I mean, I think it's, again, that issue went down to the district court. The district court ruled on that exact issue in terms of AB 5 and the non-contract hospital services and what the plaintiffs are attempting to do through this motion, and I will use your term, is to piggyback in this argument to motion to clarify when that issue has already been decided by the district court judge on remand. Okay. What about the state court action? What role, if any, do you believe that has? How should we view that as an appellate court in this matter? Is this something where we because we're dealing with the Medicare statute, we don't have such an obligation? Well, what I would say to you today in terms of this motion to clarify is that plaintiffs chose to challenge AB 5 in state court. They, in this particular action, did not challenge AB 5. You said it earlier in the argument that Mr. Bookman put forward. There was no statement in their pleadings or in the argument that took place on March 27, 2009, that they wanted AB 5 enjoined in addition to AB 1183. So what I would say to you is in terms of the issue that you're deciding with today, they simply did not ask for any injunction of AB 5, and the fact that they're pursuing that in state court just simply shows that that's the forum that they decided to pursue. Let me ask you this question, please. I asked Mr. Bookman about how AB 5 fits into the AB, I'm sorry, AB 1183. From the state's perspective, I think I saw something about this in the pleading. If you view our injunction of April the 6th as enjoining the application of AB 1183, is it the state's position that it is simply proceeding with AB 5, that portion of AB 5 which has not been included in the language of AB 1183? That's correct, Your Honor, because that particular language is still the law and is still in effect and has not been enjoined. And it was not included in any way in the amendments made in AB 1183? That's correct, Your Honor. And I've heard Mr. Bookman use the term that AB 1183 retained the enactment of AB 5. Essentially what AB 1183 did is it did not repeal the law that was already in effect and already being implemented, which was the 10% rate cut enacted by AB 5. That did not change at all when AB 1183 was enacted. And so reality, to the degree AB 5 is enacted, and we'll put to the side for a moment whether or not that was validly enacted. But for the moment, let's just say the arguendo that that is still valid to the degree that was not amended by 1183, that remains law and that's what the state is implementing. That's correct, Your Honor. What about the time issue? I know you mentioned that they delayed past the 14 days. Does your pleading pretty much state that the state's position on that, that there was no excuse for the delay? That's correct, Your Honor. It is our position that they had knowledge that they knew the department's position that essentially any injunction that would happen or may happen of AB 1183, that essentially what the department would do would stop those rate reductions that were enacted by AB 1183 and would essentially return the reimbursement rates to what they were prior to AB 1183, which was the 10% reduction of AB 5. We would argue that's consistent with the order that was issued on April 6, 2009, and that's exactly what the department is doing. In order for it to be timely, we've got to find that there was some good cause for the delay beyond 14 days. That's my understanding of the law, Your Honor, yes. Yeah, and good cause isn't enough that they tried to work it out with you guys before coming to us? Well, I would say trying to work it out. Essentially, they were sent several emails to me personally inquiring as to when the order was going to be implemented. I had communications with Mr. Cavill and Mr. Bookman notifying them essentially when the department was going to be AB 1183, not ceasing the rate reductions of AB 5. Do we have those emails in front of us so we know precisely what you were saying was going to happen and what they thought was going to happen, or is it possible that they didn't know for sure until we got the final order coming down from you guys as to what they were going to do? Well, Your Honor, what I would say is it's, I mean, certainly not relevant, I would say, because the fact of the matter is they contacted us after the 14 days. So you're saying that the first emails occurred after the 14 days? That's correct, Your Honor. And what prompts the emails at that time? Have you given them any signal that you were going to interpret the order differently from the way they now interpret it? Your Honor, I mean, essentially our position is we're dealing with AB 1183, so any injunction, we're going to simply stop anything that was put forth in AB 1183. So I understand your position, but I'm trying to figure out is at what point did they understand that that's your position? Your Honor, well, it's my understanding is what Mr. Cavell has alleged is that it wasn't until we published a bulletin on our website that they actually understood that that's how we were going to interpret the order. Right, and what day was that bulletin published on the website? I believe it was April 22nd, 2009, and I do believe that was in the pleadings that were submitted by the plaintiffs. Our written order is April the 6th, and when did they first file their motion? That's May 12th. Okay, I got it. I don't have any more questions. I don't know whether the other panel members do. Not I. No. Your Honor, I have nothing further. This is Lloyd Bookman. May I just address two points briefly, including the timeliness issue, as well as something Ms. Chambers said about the intervention. As to timeliness, we didn't understand the state's position that the state would not be applying the stay to this 10% reduction that we're talking about today until an email we received from Ms. Chambers on April 23rd, 2009, which is in the material we submitted to the court. In response to emails that we had previously submitted, she said, okay, here's what we're going to do. April 22nd, she's absolutely correct. On April 22nd, the department did post on their website a bulletin explaining what they would do, and at that point in time, they said we're only going to stop the CMAQ minus 5% reduction. We're not going to stop the 10% reduction. After Ms. Chambers confirmed all of that on April 23rd, we then wrote her a letter dated April 27th, which is in the material that we submitted, saying, gee, we think you guys have it wrong. Would you please reconsider? We think the order does include the 10% reduction. She got back to us on April 30th and said, no. She sent us a letter saying, no, we got it right. It doesn't apply to the 10% reduction. That's the trigger we use to say we can either go back to the court on a contempt motion, which would require the court to construe its order and decide whether it included the 10% reduction or not, but we don't want to do that. The Hospital Association doesn't want to file a contempt motion against the director of the Department of Healthcare Services. That's not something that we would do very lightly, obviously. We thought at that point it was appropriate to come in with a motion for clarification. That's why the timing took so long. Again, we could have come in with a motion for contempt and probably gotten an effect to the same place. We just didn't want to do that. The other point I'd like to make as to intervention, the hospitals have not successfully intervened in the Independent Living Center AB-5 case. Our firm does represent other providers who have intervened in the Independent Living Center case, a doctor or two, a dentist or two, and a couple of other providers, but not hospitals. Ms. Chambers is correct that one of the members of my firm did argue on behalf of those interveners in front of the court at the Independent Living Center hearing, but again, it wasn't on behalf of the hospitals. The hospitals have not and are not a party to the Independent Living Center case, either directly or as interveners. Did someone from your firm argue on behalf of any of the parties that were excluded by the district judge in her injunction? The only parties that were concerned about were hospitals, and no, we did not argue on behalf of the hospitals since, again, we didn't have a hospital plaintiff party. How about managed care plans, not affect acute care hospitals? Well, acute care hospitals we represent, but we weren't in the Independent Living Center case. We did not represent hospitals except for the successful attempt to intervene. And we don't represent the managed care plans. You say you do not? Correct. I just wanted to clarify the record on that. All right, thank you, counsel. You all, thank you.
judges: Reinhardt, W. Fletcher, M. Smith